UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:19-CR-101 JD |
| ROMERO BOSTON | |

**OPINION AND ORDER**

Defendant Romero Boston is charged with seven counts including distribution of heroin and being a felon in possession of a firearm. The Court previously committed Mr. Boston to the custody of the Attorney General for a determination of whether he will attain the capacity to proceed to trial. Based upon the report of the Bureau of Prisons psychiatrist and consent of the parties, the Court finds Mr. Boston is now competent to stand trial. The Court will terminate the stay of the Speedy Trial Act period by this order and set a trial date in a separate docket entry.

**A. Background**

On April 25, 2022, the Court, after a hearing to consider competency and with the agreement of the parties, ordered Mr. Boston to undergo a psychiatric evaluation with Dr. Jeff Burnett to determine whether he was competent to stand trial. (DE 60.) Dr. Burnett then tendered a report to the Court and the parties. This report noted the possibility of malingering by Mr. Boston but concluded that the balance of information available supported finding Mr. Boston had a mental illness and that he was presently incompetent to stand trial. (DE 61 at 8–9). Based upon Dr. Burnett's report, the parties' lack of objection to that report, and the Court's own observations of Mr. Boston's behavior, on June 9, 2022, the Court found that Mr. Boston was presently incompetent to stand trial. (DE 65.)

The Court then committed Mr. Boston to the custody of the Attorney General, pursuant to 18 U.S.C. § 4241(d), for a determination whether there was a substantial probability in the foreseeable future that Mr. Boston would attain the capacity to permit the proceedings to go forward. Pending the resolution of this evaluation, the Speedy Trial Act period was stayed pursuant to statute. 18 U.S.C. §§ 3161(h)(1)(A), 3161(h)(4). Mr. Boston was placed by the Bureau of Prisons at the Chicago Metropolitan Correctional Center (MCC). On May 17, 2023, the MCC Warden submitted a Certificate of Restoration of Competency to Stand Trial as well as a report regarding the forensic evaluation of Mr. Boston prepared by psychiatrist, Dr. Abdelaal. (DE 75.) The parties, having had the opportunity to review the report, have filed their responses. (DE 77, 78.)[1]

Dr. Abdelaal's forensic evaluation considered, among other things; Dr. Burnett's report, Mr. Boston's medical records, observation of Mr. Boston at his housing unit at MCC, audio recordings of several of Mr. Boston's phone calls from the MCC, and five interviews with Mr. Boston. Dr. Abdelaal also performed several forensic tests on Mr. Boston designed to determine the severity of any mental illness or impairment he suffered from, his knowledge of basic legal concepts, and determine whether he was malingering, exaggerating, or feigning mental illness symptoms.

Dr. Abdelaal diagnosed Mr. Boston with antisocial personality disorder and malingering, and concluded that he is not suffering from a mental disease or defect rendering him incompetent to stand trial. One of the exams Dr. Abdelaal administered was the Evaluation of Competency to Stand Trial- Revised (ECST-R) which rates an individual's impairment on four axes related to

---

[1] The Speedy Trial Act period remains stayed pursuant to statute as the Court evaluated the certificate of competency, awaited the parties briefing, and took the competency issue under advisement. 18 U.S.C. §§ 3161(h)(1)(A), 3161(h)(1)(H).

their competency to stand trial: factual understanding of the courtroom proceedings, rational understanding of the courtroom proceedings, overall rational ability, and rational ability to consult counsel. Dr. Abdelaal found that Mr. Boston placed in the lowest range of impairment, "normal to mild impairment," on three out of four of these axes and placed in the second to lowest range, "moderate impairment," on the fourth.[2] The ECST-R also contains the Atypical Presentation Scale (ATP scale) which is a screening measure of response style. Mr. Boston's results for the ATP scale indicate he was likely exaggerating or overreporting symptoms and problems with competency related abilities.

    Dr. Abdelaal also administered the Inventory of Legal Knowledge (ILK) exam, which is designed to measure feigning, a behavior similar but distinct from malingering.[3] Mr. Boston's score raised a significant concern about a feigned or irrelevant response style, indicating Mr. Boston's legal capacities are likely better than what he portrayed. Dr. Abdelaal also administered the Validity Indicator Profile (VIP) which is a test designed to identify valid and invalid responding. Mr. Boston was administered both subtests of the VIP and the results to both indicate he had a suppressed response style, which Dr. Abdelaal indicates is sufficient evidence to conclude Mr. Boston intentionally represented himself as impaired on both subtests.

    On top of forensic examination and tests, Dr. Abdelaal also relied on observations of Mr. Boston's telephone calls and his interactions with staff members and other inmates in his housing unit. Dr. Abdelaal found that Mr. Boston's self-reported lack of knowledge about legal information or concepts was inconsistent with discussions he had on the telephone or with

---

[2] Each axis is rated on four ranges of impairment: normal to mild, moderate, severe, and very extreme.

[3] As discussed in Dr. Abdelaal's report, malingering includes the inference that an external incentive is responsible for exaggeration or fabrication of symptoms.

housing unit staff. During his commitment, Mr. Boston was also able to function independently on a work detail as the unit barber and assisted peers on the housing unit with solving technical issues that occurred with their tablets and computers. Dr. Abdelaal further noted that Mr. Boston's impairment on only one axis of the ECST-R is inconsistent with an intellectual disability, which would normally manifest as impaired functioning in multiple domains rather than one.

The Government accepts Dr. Abdelaal's report and asks the Court to do the same and find that Mr. Boston is competent to stand trial without an additional evidentiary hearing. Defense counsel, after reviewing the report with Dr. Jeffrey Burnett, does not challenge the conclusions of Dr. Abdelaal's report and agrees the Court should find Mr. Boston competent and set this case for trial without an additional hearing. Defense counsel also notes that Dr. Abdelaal's report suggests Mr. Boston does not have a completely normal capacity to understand the proceedings against him and assist in his defense. Counsel points to Mr. Boston's score of moderate impairment on the ECST-R axis for factual understanding of courtroom proceedings, several answers to interview questions where he expressed a limited understanding of the role of defense counsel, and his learning disability documented by Chicago Public School records.[4] Defense counsel also asks the Court to remain willing to reopening the issue of competence, should new developments show that there is reasonable cause to believe the defendant is unable to assist properly in his defense.

**B. Legal Standard**

---

[4] The Court would note that defense counsel does not address Dr. Abdelaal's malingering diagnosis, in particular as it relates to Mr. Boston's knowledge of legal facts and concepts.

"A criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396 (1993). The standard for competence to stand trial is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez*, 509 U.S. at 389 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

Under the governing statute, if the court has found a defendant incompetent to stand trial, then the court will commit the defendant to the custody of the Attorney General for a determination of whether "there is a substantial probability that in the foreseeable future [defendant] will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1). The statute further provides that when the director of the BOP facility where the defendant is committed, under 18 U.S.C. § 4241(d), finds the defendant to be competent, the director shall promptly file a certificate to that effect with the clerk of court. 18 U.S.C. § 4241(e). The court may then conduct a hearing to determine the competency of the defendant. *Id.* If after the hearing the defendant is found competent, the court will order his immediate discharge from the facility and set a trial date. *Id.*

When a court receives the certificate of competency and there is no objection from either party, a court has discretion as to whether it will hold a second competency hearing. *United States v. Bashatly*, 2020 WL 256117, at *3 (N.D. Ind. Jan. 17, 2020) (citing *Whalem v. United States*, 346 F.2d 812, 815 (D.C. Cir. 1965) (overruled on other grounds by *United States v. Marble*, 940 F.2d 1543 (D.C. Cir. 1991)); *see also United States v. Caplan*, 633 F.2d 534, 539 (9th Cir. 1980) ("[W]hen a defendant has been committed as incompetent under 18 U.S.C. §§ 4244 and 4246 and has been returned to court as competent by the commitment institution, a second competency hearing is not automatically required. Instead, whether a hearing is required

5

will depend upon the facts of the particular case."); *United States v. Sausedo*, 699 Fed. Appx. 565, 566 (7th Cir. 2017) (unpublished) (affirming finding of competency based on an uncontested BOP psychiatric report).

### C. Discussion

While the parties do not object to Dr. Abdelaal's assessment, the Court independently finds, by a preponderance of the evidence, that Mr. Boston is presently able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, as required by § 4241(d).

Dr. Abdelaal found that there were no indications Mr. Boston suffered from a mental illness or defect which would impair his capacity to assist in his defense. In particular, Dr. Abdelaal found that Mr. Boston did not exhibit a self-defeating motivation regarding resolving his case or making decisions about the case. Nor did he exhibit a tendency to acquiesce, and he was able to rationally discuss his legal situation despite stating he did not have the factual knowledge required to comprehend hypothetical situations.

Mr. Boston also indicated an understanding of the proceedings against him, inasmuch as he conveyed he understood he was facing criminal charges related to drugs and firearms which carried the potential of imprisonment. Dr. Abdelaal also found that Mr. Boston understood what was expected, behaviorally, of him while in court. Further, Mr. Boston could discuss his legal situation while on the phone, providing instructions to friends and family members, and planning for when he was no longer incarcerated. This included him discussing the evaluation he was undergoing and its role in the pending legal proceedings. Further, Mr. Boston was able to behave

6

normally in interactions with staff and other inmates, functioning independently as unit barber and assisting peers on his housing unit with technical issues on their tablets or computers.

As discussed above, Mr. Boston indicated a lack of factual knowledge of the criminal justice system and the court process during his evaluations. However, Dr. Abdelaal indicated that this lack of knowledge was inconsistent with prior evaluations or discussions he had on phone calls or with housing unit staff members where he did know that information. Further, multiple evaluations of his response style support the conclusion that he was malingering and concealing his true capabilities.

The Court acknowledges that an expert report is not necessarily conclusive as to a defendant's competency. *Burt v. Uchtman*, 422 F.3d 557, 564 (7th Cir. 2005). At the same time, there is no evidence contrary to Dr. Abdelaal's opinions in the record, and both counsel, as well as Dr. Burnett, have stated that they accept Dr. Abdelaal's conclusions and believe the Court should find Mr. Boston competent and set this case for trial. The Court will also note that Dr. Burnett's evaluation of Mr. Boston does not directly contradict the more extensive evaluation of Dr. Abdelaal as he acknowledged the possibility of malingering.[5]

The Court's prior order finding Mr. Boston incompetent to stand trial also relied, in part, on the Court's brief observations of Mr. Boston in which he appeared rather lethargic and slow, with a limited ability to communicate. Dr. Abdelaal's diagnosis of malingering offers a new perspective on these observations. These behaviors may be indicative of Mr. Boston's malingering or at the very least possess more limited weight given his malingering diagnosis. Nothing in this order should be read as prejudicing counsel, or the Court *sua sponte*, from

---

[5] Dr. Burnett did not have the benefit of observing Mr. Boston over the course of several months and conducting as many interviews to evaluate his competency. Rather, pursuant to his appointments by the Court, Dr. Burnett met with Mr. Boston twice.

revisiting the issue of competency if new developments show there is reasonable cause to believe Mr. Boston may not be competent.

### D. Conclusion

Accordingly, the Court finds that Mr. Boston is competent to stand trial and will set a trial date in a separate docket entry. The stay of the Speedy Trial Act period is terminated with the entry of this order.

SO ORDERED.

ENTERED: June 5, 2023

                                                     /s/ JON E. DEGUILIO
                                                   Chief Judge
                                                   United States District Court